## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN RE                                    )
                                         )
WALTER IRMEN                             )      No. 07 B 03103
                                         )
              Debtor.                    )

## MEMORANDUM OPINION ON DEBTOR'S
## MOTION TO CONVERT TO CHAPTER 11

About six months after filing his voluntary bankruptcy under Chapter 7 of the Bankruptcy

Code, the Debtor Walter Irmen moved to convert this case into one under Chapter 11 pursuant to

11 U.S.C. § 706(a).

The Motion rests on Debtor's assertion that he can and will exercise his new rights in Chapter

11 to attack and reopen two large pre-petition default judgments entered in a state court which had

prompted his Chapter 7 filing, thereby reducing his debt and making reorganization feasible in

Chapter 11.   This Motion was objected to by creditor Mercantile Brokerage Company

("Mercantile"), the Chapter 7 Trustee ("Trustee") and creditor, Kenneth M. Neiman ("Neiman").

The issue thereby became a contested proceeding under Rule 9014(c) Fed.R.Bankr.P.

Debtor was ordered to file a supplement showing the legal and factual basis on which he

proposed to attack the two default judgments; state an explanation why he had not sought to vacate

those judgments prior to filing in bankruptcy; describe an outline and proposed timing of a Chapter

11 Plan if the case is converted; and describe assets to be used under the Plan.  Debtor was also

ordered to specify each factual allegation made in each Objection to Conversion which he denies,

as a form of Answer thereto.  The Order requiring that was entered pursuant to Rule 7008(a)

Fed.R.Bankr.P. [Rule 8(b) Fed.R.Civ.P.] which was applied to this contested proceeding as allowed

by Rule 9014(c ).

Debtor filed a "Proposed Chapter 11 Plan:"

In the instant case, conversion to Chapter 11 would effect a speedy, efficient reorganization on a feasible basis and Irmen's proposed Chapter 11 plan would serve a valid reorganizational purpose. Virtually all of Irmen's listed secured and unsecured creditors are creditors of *corporate entities*, Auxano Wireless Inc. or Auxano, Inc.. These creditors were listed because at the time of filing, Irmen was unsure of which corporate creditor might file proof of claims against him personally. Conversion to Chapter 11 would allow Irmen to file an adversary action avoiding a preference and judgment lien. On January 8, 2007, a default judgment against Walter Irmen and for Mercantile and Kenneth Neiman was entered in the amount of $775,285.00. On February 2, 2007 Mercantile and Neiman recorded a memorandum of judgment in the Recorder's Office of Cook County, Illinois for Irmen's residence, held in tenancy by the entirety with his wife Linda, located at 508 S. Ridge, Arlington Heights, IL. Pursuant to 735 ILCS 5/12-101, "a judgment…is a lien on the real estate of the person against whom it is entered…from the time…a memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located." By recording a memorandum of judgment on February 2, 2007, Mercantile and Irmen obtained a judicial lien on the real estate owned by Irmen. This lien is a preference and can be avoided pursuant to 11 U.S.C. §547. Conversion would also allow Irmen to return to the state court and vacate what is without any doubt and evident from the court record a void default judgment for $775,285.00 for Mercantile and Irmen. The *Rooker-Feldman* doctrine prohibits this Court from addressing the state court default judgment and the automatic stay provision prohibits Irmen, who unlike the Trustee, has no standing to present a motion to vacate the default judgment. Likewise, allowing Irmen to convert to Chapter 11 would also allow him to return to the state court and argue his motion to vacate the default judgment against Irmen and for BP Products North America, Inc. in the amount of $1,953,777.80. Since the filing of his petition, Irmen has found new employment as a project manager in real estate acquisition. He has doubled his income to $160,000 and can propose a plan which will be to the benefit of his creditors.

In response to the Order for further information, Debtor filed a Supplement asserting various

arguments and legal basis on which he proposes to seek vacation of the large BP Products Default

Judgment, and the large Mercantile/Neiman Default Judgment. He seeks to convert to

Chapter 11 so that he will recover standing to attack those judgments, standing that passed to the

Chapter 7 Trustee in bankruptcy (which the Trustee has not sought to exercise in state court).

He further proposes to object to claims filed by the large creditors and expects to seek leave

here to amend the Schedule F he filed so as to reclassify the large debts from undisputed to disputed,

thus driving down the debt to less than $30,000 unsecured, plus his home mortgage debt. He asserts

that his income has increased since his bankruptcy filing and this new income will be the source of

Chapter 11 Plan payments.

However, Debtor chose not to deny specifically most of the allegations contained in the

Objection as ordered. Instead, he pleaded:

> "The Debtor denies each and every one of the factual allegations
> made in the Objection."

Those Objections had asserted a list of specific allegations which were not specifically denied

and are therefore deemed admitted under Rule 7008(a) Fed.R.Bankr.P. [Rule 8(b) Fed.R.Civ.P.],

including the following:[1]

Undenied Mercantile Allegations

Prior to the bankruptcy filing, Debtor and his wife owned and operated three businesses, as

to which Debtor failed to supply many of the tax returns and financial documents sought by

Mercantile through discovery ordered here under Rule 2004 Fed. R. Bankr. P. Further, the Debtor

failed to disclose the following required information on his schedules:

-       A cash value whole life insurance policy and a term life policy

-       A Fidelity Investment account

---

[1] Other asserted factual allegations were contested or explained. Whatever may be the truth
as to those other matters, they are not relied on for this ruling.

- Three Citibank accounts owned within 1 year before filing

- A security deposit of $6,000 on leased property

- Bond monies posted with the State Court to obtain his release after being held in contempt of the state court when he declined to cooperate with post judgment proceedings to discover his assets.

The Chapter 7 Trustee similarly complained about inaccuracy of the Schedules and failure to provide business records and information.

Neiman alleged details as to the state court judgments and underlying facts pertinent thereto, and also other pending litigation was described.

Debtor's schedules showed no disposable income that might be used in a Chapter 11 Plan.

He has not since amended his Schedules or produced all of the business records requested by Mercantile.

### Under Marrama the Motion can be Denied for Bad Faith

The creditors and the Trustee argue, because of Debtor's errors in his Schedules and lack of business records and disposable income, as well as his delay in seeking to set aside the state court judgments pre-petition, that his Motion to Convert to Chapter 11 is brought in bad faith and does not demonstrate a possible viable Chapter 11 Plan.

The Supreme Court Opinion in Marrama v. Citizens Bank of Mass. et al., 127 S. Ct. 1105 (2007), dealt with a debtor's asserted absolute right pursuant to 11 U.S.C. § 706(a) to convert from a Chapter 7 to a Chapter 13. The reasoning in Marrama applies as well to a motion to convert from Chapter 7 to Chapter 11. Therefore, in order to convert to Chapter 11, Walter Irmen ("Debtor") must

- 4 -

show that he "may be a debtor under such chapter." 11 U.S.C. § 706(d); Marrama, 127 S. Ct. at

1111.

As the Opinion in Marrama reasoned, it would be absurd to allow a debtor the absolute right

to convert to Chapter 11 under § 706(a) only have that case immediately dismissed pursuant to 11

U.S.C. § 1112(b)(1). See id. at 1109 (quoting In re Marrama, 430 F.3d 474, 479 (1st Cir. 2005)

(citations omitted)). Section 1112(b)(1) provides for the dismissal of a case for "cause," which is

defined in a non-exclusive list in § 1112(b)(4), and has also been interpreted to include bad-faith.

The undersigned recently issued an opinion de-emphasizing the commonly used multi-part tests for

determining bad faith, and holding that the determination should rest primarily on whether the debtor

has any possibility of confirming a legally and economically feasible plan of reorganization. In re

Strug-Division, LLC, 375 B.R. 445, 449 (Bankr. N.D. Ill. 2007). However, pre-petition misconduct

and conduct during bankruptcy will be considered to the extent that the debtor's lack of credibility

will show bad faith and affect creditor's ability to negotiate a Chapter 11 Plan. Id., and cases cited.

Debtor proposes to fund his Chapter 11 reorganization by vacating the large default

judgments entered against him in state court in favor of BP and Mercantile/Neiman. He plans on

objecting to a number of claims against him formerly scheduled as undisputed that he now believes

should be recognized as debts against corporate entities that he has controlled and not against him.

This will supposedly lower his total debt to a manageable amount that he believes he can repay with

his current income now asserted to be approximately $150,000 per annum.

Creditors respond that: (1) This Court cannot review the state court judgments under the

Rooker-Feldman doctrine, and that Debtor has not shown a legal basis for vacating the state court

judgments; and (2) Debtor's schedules were false for originally scheduling his debts as admitted, or

he should be bound by those schedules admitting debt and not be allowed to challenge the validity of that scheduled debt.

Finally, Creditors argue that Debtor's ability to reorganize should be measured by his financial situation at the time of filing his Chapter 7 petition and not based on the possibility that the state court judgments will be vacated and/or new asserted sources of income. However, this last argument contradicts the Congressional intent to be served by a § 706(a) motion to convert. See Marrama, 127 S. Ct. at 1111 ("Congress sought to give [the class of honest but unfortunate debtors] the chance to repay their debts should they acquire the means to do so."). Thus, § 706(a) may be used to convert where a debtor's ability to reorganize is based on a set of circumstances different from when the original Chapter 7 petition was filed.

The question remains whether Debtor belongs to that class of "honest but unfortunate debtors," and whether this history demonstrates a likely viable Chapter 11 Plan.

## *Debtor Admissions*

Creditors made many allegations about how Debtor committed misconduct by undervaluing the value of his home and scheduling corporate debts for which he originally acknowledged personal liability for but now plans to object to. They also raise arguments about inconsistencies between Debtor's schedules and answers provided at his Rule 2004 examination. While not all the points are given credence in absence of evidence, Debtor has been deemed to admit false schedules, lack business records that he should possess, and failed to plead defenses in the state court to avoid default judgments and delayed in seeking to open them. That is enough to show a Debtor who cannot be relied on and a Motion that has been filed by him in bad faith.

### *Debtor's Unlikely Plan*

"The *Rooker-Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party?" <u>GASH Associates v. Village of Rosemont, Illinois</u>, 995 F.2d 726, 728 (7th Cir. 1993). Here, Debtor is alleging an injury, the debts, caused by a state court judgment, and not an existing injury that the state court failed to remedy. Thus, the Rooker-Feldman doctrine applies and the bankruptcy court does not have jurisdiction to vacate the state court judgments and cannot weigh the arguments for and against vacating the state court judgments.

However, any proposed plan of reorganization depends on having the state court judgments vacated, and there is enough presented here to show that any attempt to vacate the state court judgments would have to surmount many legal and factual difficulties, not the least of which would be due to Debtor's long delay in seeking to do so. Those prospective difficulties make the Debtor's Plan which would rest on vacation of the judgments wholly speculative. Moreover, the deemed admissions of lack of business records and schedule errors that are detailed above are clear. On top of the difficulty and uncertainty in an effort to vacate the judgments, those admissions suggest Debtor's bad faith reflected by a casual attitude toward reporting of accurate information.

## CONCLUSION

For the foregoing reasons, Debtor's Motion to Convert to Chapter 11 will by separate

order be denied.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 1st day of February 2008.